494 P.2d 385

**YELLOW CAB COMPANY OF PHOENIX,**
Inc., and Easton Earl Kelsey,
Appellants,

v.

Myrna L. GREEN, a widow, Appellee.

No. 1 CA–CIV 1658.

Court of Appeals of Arizona,
Division 1.

March 6, 1972.

Evans, Kitchel & Jenckes, by F. Pendleton Gaines, III, Phoenix, for appellants.

Eugene C. Simon, Phoenix, for appellee.

HOWARD, Judge.

This case involves a "rear end" collision which took place on February 6, 1967, at the intersection of Osborn Road and 24th Street in Phoenix, Arizona. Appellant, Easton Earl Kelsey, was the driver of a cab owned by appellant, Yellow Cab Company of Phoenix, Inc., and the plaintiff below, Myrna L. Green, was the driver of the automobile rear ended by Kelsey. At the trial defendants Kelsey and Yellow Cab defended on the theory of a sudden brake failure. Defendant Yellow Cab's maintenance manager, called to testify on behalf of defendants, stated that the brake failure on the taxicab was found to have resulted from the sudden rupture of a flexible hose leading from the master brake cylinder to the left front wheel. He further testified that the failure which occurred was sudden and total, and could not have been gradual.

Defendants appeal from a $5,000 jury verdict awarded against them contending that the court erred in giving a negligence per se instruction, in the admission of evidence outside the scope of the pleadings and pretrial statement, in allowing inadmissible hearsay and in denying a motion for mistrial after counsel had been apprised that the jury had viewed, during deliberation, exhibits which both parties had agreed were not to go to the jury.

## NEGLIGENCE PER SE

The plaintiff requested, and the court gave, MARJI #11 on the subject of negligence per se. This instruction read:

"It may be necessary for you to consider in your deliberations what the law of the State was that was in effect at the time of the collision in question, and which controlled the operation of motor vehicles. I will read them as follows:

Every motor vehicle, other than a motorcycle or motor-driven cycle when operated upon a highway shall be eauipped [sic] with brakes adequate to control the movement of and to stop and hold the vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that the failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels.

All brakes shall be maintained in good working order and shall be so adjusted as to operate as equally as practicable with respect to the wheels on the opposite sides of the vehicle.

No person shall drive or move on any highway any motor vehicle, semi-triler [sic], or any combination thereof unless the equipment upon any and every

such vehicle is in good working order and adjustment as required in this chapter and the vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person upon the highway.

Should you find that any part of this vehicle violated any of the foregoing laws, then it would be negligence as a matter of law, and you should then consider the issue of whether that negligence was a proximate cause of the plaintiff's injury."

Based upon the recent case of O'Donnell v. Maves, 108 Ariz. 98, 492 P.2d 1205 (No. 10336, January 26, 1972) the foregoing instruction is prejudicially erroneous.

In the *O'Donnell* case the plaintiff was struck from the rear due to the sudden brake failure of the Maves vehicle. He urged that he should have been awarded a directed verdict as to negligence in the trial court because the defendant was negligent per se due to his failure to conform to A.R.S. § 28–952, as amended, which requires every motor vehicle to be equipped with adequate brakes. The court held that only where, admitting the violation, the defendant fails to offer any legal excuse can negligence be said to exist as a matter of law. The court further held that when it is shown that the statute, A.R.S. § 28–952, has been violated, the burden shifts to the defendant to prove to the satisfaction of the jury that his failure to comply with the statute was without fault and that if there is sufficient evidence from which a jury could find that the brake failure was not due to the fault of the defendant, it then becomes a question of fact for the jury to decide whether fault in fact existed.

There is no doubt in the case *sub judice* that an issue of fact as to the brake failure was presented. Plaintiff claims that another instruction which was given by the court cures the error. This instruction stated:

"You are instructed that the mere fact that the brakes failed on the automobile driven by the defendant Easton Earl Kelsey is not, standing alone, sufficient evidence upon which to base a finding that he was negligent. You must also find that he knew, or in the exercise of reasonable care, should have known that his brakes would fail, and that he thereafter failed to act as a reasonable and prudent man under the circumstances."

■ While it is axiomatic that instructions are to be construed as a whole, it is equally true that instructions must not be conflicting or contradictory. Glenn v. Chenowth, 71 Ariz. 271, 226 P.2d 165 (1951). If the instruction is misleading to the jury and prejudices the rights of the appellant the giving of that instruction constitutes reversible error. Noland v. Wootan, 102 Ariz. 192, 427 P.2d 143 (1967). The instruction of which the defendants complain tells the jury that a violation of the statute is negligence and that it has nothing further to consider upon finding a violation of the statute other than whether or not the negligence was the proximate cause of the plaintiff's injury. The instruction cited by plaintiff is exactly opposite to and conflicts with the negligence per se instruction. When reading the instruction as a whole in this case one is not enlightened, but rather confused.

## EVIDENCE OUTSIDE THE SCOPE OF THE PLEADING

■ On cross-examination of the defendants' expert witness plaintiff's counsel pursued a line of questioning dealing with when the taxicab here involved had been last serviced prior to the collision, what that servicing consisted of, whether there was a defect in the brake hose at the time, and if so, whether it should have been discovered, and other similar questions all concerning the servicing and maintenance of the taxicab. Defendants objected to this line of questioning on the ground that it was not within the scope of the pleadings and statement in lieu of pretrial. We do not agree. Prior to cross-examination, the witness was asked on direct examination

questions covering the mechanical and operational aspects of the braking system including the nature of the defects on the taxicab in question. Defendants' defense was that there was a sudden failure of the braking system. On cross-examination the plaintiff obtained an admission from the witness that the defect was of such a nature that it should have been discovered during the defendants' normal servicing of the vehicle. The purpose of the cross-examination was not to establish negligent maintenance as a cause of action or basis of damage, but solely to refute the defense of sudden brake failure, and was proper.

## HEARSAY STATEMENTS

■ On direct examination, the plaintiff was allowed to testify that she got out of her car in a matter of seconds after the accident, went to the rear of her car and had a conversation with an unidentified passenger in the taxicab. She testified that this passenger said, "Well, he could hardly get stopped at the last intersection."

■ The rule in Arizona is that an excited utterance, to come within the *res gestae* exception to the hearsay rule, must have prerequisites: (1) There must be a startling event, (2) the words spoken must be spoken soon after the event so as not to give the person speaking the words time to fabricate, and (3) the words spoken must relate to the startling event. State v. McLain, 74 Ariz. 132, 245 P.2d 278 (1952).

■ The admissibility of such evidence is a matter that should be left to the discretion of the trial court and where no abuse of discretion appears the ruling of the trial court as to its admissibility must stand. Musgrave v. Karis, 63 Ariz. 417, 163 P.2d 278 (1945). This does not by any means give the trial court complete control over the admissibility of such matters. Maynard v. Hall, 61 Ariz. 32, 143 P.2d 884 (1943). We believe that the appellee has met the first two foundational requirements of *McLain*. Although the impact may not have been great, there was still a startling event. There is no requirement

that the person who makes the statement be in a daze, upset, excited condition or in shock. The only thing that is necessary is that the words spoken must be spoken soon enough after the event so as to not give the person speaking the words time to fabricate. We believe that condition has also been met. Did the utterance relate to the startling event or was it a mere recital of past events? The general rule is that a declaration which is the mere narration of past events is not admissible. McCormick, Law of Evidence § 272, at 581 (1954); 6 Wigmore, Evidence § 750(c), at 155 (3d ed. 1940). *See* Annot., 163 A.L.R. 15, at 193 (1946). However, the rule as stated does not mean that statements concerning past events are necessarily incompetent. The distinction which the cases draw is whether the statement was made so near in point of time to the accident as to exclude the presumption that it was the result of premeditation or design. If it was so far removed from the transaction as not to constitute a spontaneous utterance, it becomes merely a narration of past events, controlled by recollection and without the necessary element of spontaneity. In order for a declaration to be admissible as part of the *res gestae*, it must be the spontaneous utterance of the mind while under the influence of the transaction, the test being, it has been said, whether the declaration was the facts talking through the party, or the party talking about the facts. The dividing line between admissibility and non-admissibility lies between the words outcry and narration; between impulse and reflection. If a declaration is so far removed in point of time from the main event under investigation as to make it a mere narrative of a transaction that has happened the declaration is not admissible as substantive evidence or as part of the *res gestae*. Sears, Roebuck & Co. v. Murphy, 186 F.2d 8 (6th Cir. 1951).

We are of the opinion that the statement of the witness had the necessary element of spontaneity to make it admissible and was not in reality a narrative of past events within the meaning of the rule.

The trial court did not abuse its discretion in allowing such testimony.

Since we are reversing this case and remanding it for a new trial, the error as to the presence of the exhibits in the jury room is now moot and we trust it shall not happen on the retrial of this case.

Reversed and remanded for new trial.

KRUCKER, C. J., and HATHAWAY, J., concur.